COUDON v. TAIT, Collector of Internal Revenue.

No. 3315.

Circuit Court of Appeals, Fourth Circuit.

Nov. 28, 1932.

William A. Seifert and Frank C. Miller, both of Pittsburgh, Pa. (Frederick W. Brune, of Baltimore, Md., Smith, Shaw, McClay & Seifert, of Pittsburgh, Pa., and Semmes, Bowen & Semmes, of Baltimore, Md., on the brief), for appellant.

Simon E. Sobeloff, U. S. Atty., and Charles G. Page, Asst. U. S. Atty., both of Baltimore, Md., for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and PAUL, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal from the judgment of the District Court of the United States for the District of Maryland entered on the 8th day of February, 1932, in a suit at law for the recovery of income and surtaxes in the sum of $28,640.07, with interest thereon from the 15th day of March, 1925; the sum of $2,145.77 with interest thereon from the 15th day of March, 1926, the damages being laid at $50,000.

The facts were stipulated, and a jury trial was waived. The cause was submitted to the judge, who found for the defendant.

As was said by the learned judge below in his able and exhaustive opinion:

"Much abridged, the controlling facts may be stated as follows: As of August 1, 1920, three separate West Virginia corporations, all engaged in the manufacture and sale of steel and iron products, were merged into a newly formed Delaware corporation known as the Wheeling Steel Corporation. The merger took the form of the issuance of stock of the Delaware corporation in exchange for the stock of the West Virginia corporations, which acquired approximately 98 per cent. of all the outstanding stock of the latter. The West Virginia corporations continued their separate corporate organiza-

tions and business until May 1, 1923, when the physical properties were conveyed to the Delaware corporations and the subsidiaries shortly thereafter dissolved.

"The Delaware corporation issued its preferred and common stocks in exchange for the stocks of the subsidiaries, on a basis agreed upon by the stockholders, in the aggregate principal amount of $66,179,800. At that time the par value of the aggregate outstanding paid-up capital stock of the subsidiaries was $63,964,755; and the aggregate undistributed earned surplus of these three subsidiaries, accumulated from the operation of their respective businesses since March 1, 1913, was $21,459,085.56. During the period from August 1, 1920, to May 1, 1923, the three subsidiary corporations made payments of dividends to the Wheeling Steel Corporation in excess of their earnings during said period; this excess being paid from their separate surpluses accumulated after March 1, 1913, and existing at August 1, 1920; and the Delaware corporation in turn distributed the amount so received to its shareholders (including the plaintiff) as its dividends. The stipulation of facts does not contain any information as to the bookkeeping entries made by the Wheeling Steel Corporation at the time of the issuance of its stock or with relation to the receipt and distribution of the dividends. It appears that the merger of the corporations was actuated purely by ordinary business reasons without thought of income taxation on stockholders.

"The plaintiff's contention is that to the extent that the dividends received by the Delaware corporation from its subsidiaries during the period mentioned exceeded the earning of the subsidiaries during that period (the excess being paid from surplus accumulated since March 1, 1913) they constituted a return of capital to the Delaware corporation and were not income to it; and therefore, when in turn distributed by the Delaware corporation as dividends to its stockholders, the latter were to the extent mentioned receiving a return of their capital investment in the Delaware corporation, and not income therefrom."

The plaintiff claims that these funds were not only exempt from normal tax but also from surtax. The government admits that they were not subject to normal tax, but claims that they were subject to surtax.

The opinion of the court below is found in 56 F.(2d) 208, and in it will be found a full discussion of the authorities bearing on the issue.

The controlling statute is the Revenue Act of 1921, which imposes two taxes; a normal tax and a surtax which is variable.

Section 213 of the act (42 Stat. 237) provides:

"That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income * * * from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The term "dividend" is defined for the purposes of the act by section 201 (a) and (b), 42 Stat. 228, as follows:

"(a) That the term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, except * * *

"(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed."

It seems to us that an otherwise complicated question is made clear by a very simple statement. If there had been no merger of the three companies, no formation of the Wheeling Steel Corporation, and had the plaintiff received dividends on stock held in the subsidiary companies, such dividends would have been taxable. It follows that the formation of a holding company that did not take over the physical properties of the component companies, but merely held their stock, could not change the taxable character of the dividends in question.

In other words, the fact that the dividends in question reached the taxpayer through a holding company instead of coming to him direct from one of the original companies in no way affected the payment of the tax due the government on such dividends.

The Delaware corporation, by owning the stock of the three subsidiary companies, did not become the owner of their physical assets. Rhode Island Hospital Trust Co. v.

Doughton, 270 U. S. 69, 46 S. Ct. 256, 70 L. Ed. 475, 43 A. L. R. 1374.

A related question to the one here involved was fully discussed by the Supreme Court in United States v. Phellis, 257 U. S. page 175, 42 S. Ct. 63, 67, 66 L. Ed. 180, where the court said:

"The liability of a stockholder to pay an individual income tax must be tested by the effect of the transaction upon the individual.
* * *

"The possibility of occasional instances of apparent hardship in the incidence of the tax may be conceded. Where, as in this case, the dividend constitutes a distribution of profits accumulated during an extended period, and bears a large proportion to the par value of the stock, if an investor happened to buy stock shortly before the dividend, paying a price enhanced by an estimate of the capital plus the surplus of the company, and after distribution of the surplus, with corresponding reduction in the intrinsic and market value of the shares, he were called upon to pay a tax upon the dividend received, it might look in his case like a tax upon his capital. But it is only apparently so. In buying at a price that reflected the accumulated profits, he, of course, acquired as a part of the valuable rights purchased the prospect of a dividend from the accumulations—bought 'dividend on,' as the phrase goes—and necessarily took subject to the burden of the income tax proper to be assessed against him by reason of the dividend if and when made. He simply stepped into the shoes, in this as in other respects, of the stockholder whose shares he acquired, and presumably the prospect of a dividend influenced the price paid, and was discounted by the prospect of an income tax to be paid thereon. In short, the question whether a dividend made out of company profits constitutes income of the stockholder is not affected by antecedent transfers of the stock from hand to hand."

See, also, Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362; Burnet v. Hanlon (C. C. A.) 51 F.(2d) 463; McDonald v. Commissioner (C. C. A.) 52 F. (2d) 920; Newman, Saunders & Co. v. United States (Ct. Cl.) 36 F.(2d) 1009; Osburn California Corp. v. Welch (C. C. A.) 39 F. (2d) 41.

Appellant relies on the case of Robeson v. Commissioner, 18 B. T. A. 323, but, as is clearly pointed out by the judge below, that case is distinguishable from the present one.

A number of other points are ably discussed in the opinion of the judge below, with which opinion we find ourselves in full accord. The judgment is accordingly

Affirmed.