Reviewed by the Court.

MARGARET R. PHIPPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8854. Promulgated January 28, 1947.

*Ralph B. Mayo, C. P. A.*, for the petitioner.

*Loyal E. Keir, Esq.*, and *Thomas A. Steele, Jr., Esq.*, for the respondent.

DISNEY, *Judge*: The portion of the corporate distributions by the Nevada-California Electric Corporation in 1937 not paid from current earnings or profits was $411,896.98. The sole question here is whether that amount was paid from earnings or profits accumulated since, February 28, 1913. The respondent contends, in short, that it was so paid, because Nevada Electric had at the beginning of 1937 earnings and profits accumulated since February 28, 1913, in the amount of $2,129,957.81; while, equally simply, the petitioner argues that the $2,129,957.81 was more than offset by the fact that in the liquidation of its five subsidiaries about December 1, 1936, Nevada Electric had taken over the deficits totaling $3,147,803.62, and had taken over only $90,362.77 earnings accumulated after February 28, 1913, by the one subsidiary having any earnings, leaving Nevada Electric to absorb deficits far greater than its own post-February 28, 1913, earnings, and therefore with no accumulated earnings, on January 1, 1937, out of which to distribute the $411,896.98—so that it was distributed out of capital, tax-free.

The issue revolves around the construction to be placed upon *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667. The respondent contends that case to be authority for adding to the earnings and profits of Nevada Electric the accumulated earnings and profits of the one liquidated subsidiary having such. To this the petitioner agrees, but adds that it is also authority for passing to the parent corporation the deficits of the other four liquidated subsidiaries. To this the respondent objects, contending that earnings or profits of a liquidated corporation, if available for dividends, "*remain* available for dividends in the hands of the emerging corporation in a tax-free reorganization regardless of the operating deficits of certain of the constituent companies." Careful examination of the *Sansome* case is required. In that case the court, after pointing out the non-recognition features of the statute involved, providing that such "corporate transactions should not break the continuity of the corporate life," goes on:

\* \* \* Hence we hold that a corporate reorganization which results in no "gain or loss" under § 202 (c) (2), does not toll the company's life as a continued venture under § 201, and that what were "earnings or profits" of the original, or subsidiary, company remain, for purposes of distribution, "earnings or profits" of the successor, or parent, in liquidation. \* \* \*

Earlier in the opinion we find the thought: "Thus, there was income to tax as much as though the company continued its life."

In *United States* v. *Kauffmann*, 62 Fed. (2d) 1045, the court construed the *Sansome* case as holding that a nontaxable reorganization "was not such a change in corporate identity as prevented the new company from being considered as a continuing venture under § 201 of the

Revenue Act of 1921 and that whatever were earnings of the original corporation continued to be such in the hands of the new corporation."

*Baker* v. *Commissioner*, 80 Fed. (2d) 813, involved five subsidiary corporations taken over by another in a nontaxable reorganization, and, referring to the new corporation and the amount later distributed, the court said: "It had not in fact earned all of this amount itself, but *the combined taxable earnings* of itself and of the five predecessor companies made up that amount." (Italics supplied.) *Harter* v. *Helvering*, 79 Fed. (2d) 12, was by the same court, and the same judges, as the earlier *Sansome* case, and presents the identical question here at hand. There was in that case a nontaxable reorganization wherein two former corporations were merged into "New Company," which later was consolidated with Boxboard Co., the latter liquidating "New Company" and taking over substantially all of its assets. The court held that no gain was recognized in the reorganization between the two former companies and "New," and said:

\* \* \* A consequence of this is that for purposes of allocating dividends under § 201 (b) of the Act of 1926, against earnings before and after March 1, 1913, the surplus is regarded as unchanged. \* \* \*

Citing the *Sansome* case, the court proceeded:

\* \* \* Thus the surplus of the New Company was the difference between the assets of both the old companies and the capital shares of both, $4,307,134.34 of which only $2,085,587.78 was earned after February 28, 1913. Again when in April, 1926, the New Company consolidated with the Boxboard Company the same result ensued; for purposes of allocation the capital was $516,945 and the surplus, $4,289,745.39 of which $2,068,198.83 had been earned after February 28, 1913. \* \* \*

Later on, referring to a distribution by Boxboard Co., it is said:

\* \* \* What was left was capital or earlier earnings; when the Boxboard Company took it over, it *retained this character*, and no distribution of it could be a taxable dividend. \* \* \* [Italics supplied.]

Thus it appears that the same court which decided the *Sansome* case holds that after a nontaxable reorganization "the surplus of the New Company was the difference between the assets of both the old companies and the capital shares of both"—and that the same was true in the second reorganization, between the New Company and Boxboard. Here, then, the surplus of the Nevada-California Electric Corporation consisted of the difference between the total assets of all of the old constitutent corporations, and the capital shares of all. In other words, the deficits in earnings and profits of the four subsidiaries enter into the synthesis of the emerging surplus of the parent corporation. But, if so, the deficits more than offset the earnings of both the parent and the other subsidiary, which had earnings instead of a deficit. That such was the clear intent of the court is brought out by examination of the figures set forth by the court—for, as in the instant case, one of the

constituent companies, in the second reorganization, to wit, Boxboard, had a deficit of $17,388.95—and this deficit the court deducts in computing the surplus of the company resulting from consolidation of Boxboard and New Company; for, as above seen, the court computes the surplus of New Company prior to consolidation with Boxboard, as $4,307,134.34, and the surplus of the consolidated company as $4,289,745.39—less than the combined surpluses by $17,388.95. Thus it is inescapable that in that case the deficit of one company was subtracted from the surplus of the other. The respondent, on brief, in answer to petitioner's contention to the above effect, as to the *Harter* case, merely states that he "does not recognize such case as constituting a correct interpretation of the applicable law." Yet, the *Harter* case is interpretation of the *Sansome* case by the same court, and the same judges thereof, by whom the *Sansome* case was rendered.

This Court, in *Senior Investment Corporation*, 2 T. C. 124, though in consideration of a different statute and question than herein involved, appears to indicate agreement with the principle of carrying the deficit of a merging company into the emerging company. Therein two companies were involved, Senior Investment Corporation, and Senior Corporation, formed as a part of a plan of reorganization of Senior Investment. The latter had a deficit in accumulated earnings and profits. In the nontaxable reorganization approximately two-thirds of the deficit was assumed by Senior, and about one-third retained by Senior Investment, the petitioner. The question before us was whether the petitioner was a "deficit corporation" and entitled to a credit, within the language of section 26 (c) (3) of the Revenue Act of 1936, as added by section 501 (a) (2) of the Revenue Act of 1942. We said:

> * * * It is the rule that, where the assets of one corporation pass to a successor corporation in a tax-free reorganization, the accumulated earnings and profits of the old corporation pass to the successor with the same status and are available for the payment of dividends by the latter, *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667; *United States* v. *Kauffmann*, 62 Fed. (2d) 1045; *Reed Drug Co.* v. *Commissioner*, 130 Fed. (2d) 288; *Helen V. Crocker*, 29 B. T. A. 773; and that, where only part of the assets are so transferred, it is proper to make an allocation of the earnings and profits between the two corporations in proportion to the assets transferred and the assets retained. *Barnes* v. *United States*, 22 Fed. Supp. 282; *Estate of Howard H. McClintic*, 47 B. T. A. 188, 202.
>
> The respondent questions the petitioner's claim that it is a deficit corporation; but he makes no contention that the principles of the foregoing cases do not apply to the inheritance or absorption of a deficit. He questions the deficit only in two respects. * * *

The respondent's objections were to the method of dividing the deficit, and to the fact that it was computed on book values; so that his contention was that no deficit remained to the petitioner sufficient to

support the credit asked. We held that, regardless of which contention as to method of computation was correct, the petitioner had retained a deficit greater than its later earnings and profits, so was in the taxable year a deficit corporation and was entitled to the credit sought. Thus appears recognition of offset of earnings of a reorganized corporation by deficit prior to reorganization, for if after the reorganization and in the taxable years the petitioner there had earnings and profits it would not have qualified for credit under the statute—yet it would have had such earnings and profits had the prereorganization deficit not been applied against them.

In *Stella K. Mandel*, 5 T. C. 684, we followed *Senior Investment Corporation, supra*, noting the "substantial identity of the old company in the several corporations involved" and the "continuity of proprietary interests so as to make the rationale of the above cases applicable"—referring to the *Sansome* case and others relied on by the respondent in contending that "accumulated earnings and profits of a transferor corporation follow its assets in proportion thereto into the hands of a transferee on a tax-free reorganization, so as to be available for dividend distribution." The principle was approved, despite the fact that the petitioner there was able to identify certain assets as acquired prior to 1913.

The respondent relies in part on *Cranson* v. *United States*, 146 Fed. (2d) 871; certiorari denied, 326 U. S. 717. In that case a parent corporation in 1936 liquidated three wholly owned subsidiaries, taking over their assets subject to liabilities in cancellation of the stock. The subsidiaries had an aggregate operating deficit of about $1,200,000. In the same year the parent had earnings of $931,553.82. It made a cash distribution in that year of $1 a share. The petitioner, a distributee, urged under the *Sansome* case that such earnings should be reduced by the operating deficits taken over, so that he received capital, and not income. The court states that the *Sansome* case did not deal with the liquidation of a subsidiary, but that Regulations 94, article 115–11 recognizes the rule as applicable thereto, but did not extend the rule to embrace operating deficits, and calls the question an open one. Pointing out that whether or not the parent company suffered losses in prior years, if there were corporate earnings or profits in that year, the Revenue Act of 1936 provides that distributions to the stockholders in that year are deemed to be from most recently accumulated earnings or profits for that year, also that $931,553.82 had been earned in 1936 and undistributed profits were on hand in the amount of $139,631.26, the court approved the action of the lower court in taxing the distribution as dividends. It had earlier noted that the deficits were not shown to have occurred in 1936, and that the burden of showing error was on the taxpayer. The

respondent urges that, since the distribution was $1 a share on 937,743 shares of stock, more than the year's earnings, the case is opposed to application of the *Sansome* case to deficits. The petitioner points out that the amount of the distribution is not shown; and this is true. We only know that the distribution was $1 a share, but do not know the number of shares. It appears that in a later case, in the District Court, there was stipulation that in 1938 the number of shares outstanding was 937,743, but this does not appear in the report of the earlier case. The case is *Cranson* v. *United States*, U. S. Dist. Ct., N. Dist. Calif., Nov. 12, 1943. We would not be justified in assuming such fact. Moreover, the point in the above case in the Circuit Court was whether previous inherited deficits would cut down current earnings (as is evidenced by the court's statement that the parent could not have deducted a deficit of its own), while here the sole question is as to effect of deficits on accumulated earnings or profits—the parties agreeing that so far as payable from current earnings the distribution is taxable. We do not consider the opinion in the Circuit Court as deciding the question presented to us here. The District Court decision, above referred to, for a later year, does recite a conclusion that operating deficits of subsidiaries do not diminish earnings or profits of the parent corporation otherwise available for distribution, but the facts of the case are not shown, and we may therefore not soundly predicate conclusion thereon.

After reviewing with care the above authorities, we have come to the conclusion that the *Sansome* and *Harter* cases are controlling here. The primary principle announced in the *Sansome* case, and since consistently followed, was that a nontaxable reorganization does not toll the life of the constituent corporations as a continued venture, and it was only the result of that conclusion to add that earnings or profits of an original or subsidiary corporation remained earnings or profits of the successor, or parent, corporation. The venture continues regardless as to whether there had been surplus or deficit in the finances of the constituent corporation; therefore, in our view, the deficit is carried forward into the finances of the resultant corporation, equally with a surplus of any other constituent, and in both cases alike there is effect on the ability to distribute earnings and profits. The petitioner's corporation is merely a prolongation, in reorganized form, of a "substantial identity" of financial situation and a "continuity of proprietary interests," to use the words of the *Mandel* case, *supra*. No convincing reason appears to differentiate between surplus and deficit in the theory of continued venture. We hold that the distributions made by the parent corporation to the petitioner in the taxable year were, above the portion stipulated to be paid from current earnings. paid from capital and were not taxable dividends.

*Decision will be entered under Rule 50.*