## COMMISSIONER OF INTERNAL REVENUE *v.* PHIPPS.

No. 83.   Argued December 10, 1948.—Decided March 14, 1949.

*Stanley M. Silverberg* argued the cause for petitioner. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle, Ellis N. Slack, Lee A. Jackson* and *Helen Goodner.*

*W. Clayton Carpenter* argued the cause for respondent. With him on the brief were *Montgomery Dorsey* and *William L. Branch.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

This case involves a tax-free liquidation by a parent corporation of some of its subsidiaries. At the time of the liquidation the parent had earnings and profits available for distribution, and the subsidiaries had an aggregate net deficit. The issue now before us is whether the rule of *Commissioner* v. *Sansome*, 60 F. 2d 931, requires the subtraction of the subsidiaries' deficit from the parent's earnings and profits, in determining whether a subsequent distribution by the parent constituted dividends or a return of capital to its stockholders.

The *Sansome* case, *supra*, arose from a tax-free reorganization in which the transferor corporation had a surplus in earnings and profits available for distribution. It was there held that those earnings and profits, for purposes of a subsequent distribution by the transferee corporation to its stockholders, retain their status as earnings or profits and are taxable to the recipients as dividends. The rule has been held to include liquidations of a subsidiary by its parent. *Robinette* v. *Commissioner*, 148 F. 2d 513; U. S. Treas. Reg. 101, Art.

115–11, promulgated under the Revenue Act of 1938 and made retroactive, 52 Stat 447.

The facts were stipulated, and so found by the Tax Court. So far as relevant, they are as follows: In December, 1936, Nevada-California Electric Corporation liquidated five of its wholly-owned subsidiaries by distributing to itself all of their assets, subject to their liabilities, and by redeeming and canceling all of their outstanding stock. No gain or loss on the liquidation was recognized for income tax purposes under § 112 (b) (6) of the Revenue Act of 1936.[1] On the date of liquidation, one of the subsidiaries had earnings and profits accumulated after February 28, 1913, in the amount of $90,362.77. The four others had deficits which aggregated $3,147,803.62. On December 31, 1936, the parent had earnings and profits accumulated after February 28, 1913, in the amount of $2,129,957.81, which amount does not reflect the earnings or deficits of the subsidiaries. In 1937, Nevada-California had earnings of $390,387.02. In the years 1918 to 1933 inclusive the parent and its subsidiaries filed consolidated income tax returns.[2]

---

[1] "SEC. 112. RECOGNITION OF GAIN OR LOSS.

"(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) EXCHANGES SOLELY IN KIND.—

.        .        .        .        .

"(6) PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. . . ." 49 Stat. 1648, 1678–79.

[2] It does not appear in what years occurred the subsidiaries' losses which resulted in their deficits, or to what extent they were set off against the net income of the parent in consolidated return years. To the extent that such set-offs did exist, the basis of the subsidiaries' stock to Nevada-California had been reduced and the losses realized

Respondent was the owner of 2,640 shares of the preferred stock of Nevada-California. During 1937 that corporation made a pro rata cash distribution to its preferred stockholders in the amount of $802,284, of which respondent received $18,480. The Commissioner determined that the distribution was a dividend under § 115 of the Revenue Act of 1936 [3] and constituted ordinary income in its entirety.

Of the 1937 distribution, approximately 49% was chargeable to earnings and profits of the taxable year. Consequently, respondent conceded in the Tax Court that that percentage of her share, or about nine thousand dollars, was taxable as a dividend under § 115 (a) (2). The Tax Court held in her favor that the balance was not a taxable dividend out of earnings and profits, on

by the parent and availed of for tax purposes prior to the liquidation. U. S. Treas. Reg. 94, Art. 113 (b)–1, promulgated under the Revenue Act of 1936.

[3] "SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

"(a) DEFINITION OF DIVIDEND.—The term 'dividend' when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

"(b) SOURCE OF DISTRIBUTIONS.—For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113." 49 Stat. 1687.

the theory that all of Nevada-California's accumulated earnings and profits, plus the accumulated earnings and profits of the subsidiary that had a surplus, were erased by the aggregate deficits of the other four subsidiaries.[4] 8 T. C. 190. The Court of Appeals affirmed by a divided court, 167 F. 2d 117. We brought the case here on a writ of certiorari, 335 U. S. 807, because of its importance in the administration of the revenue laws, and because of an alleged conflict of the decision below with that of the Court of Appeals for the Ninth Circuit in *Cranson* v. *United States*, 146 F. 2d 871.

*Commissioner* v. *Sansome*, 60 F. 2d 931, arose thus: *A* Corporation sold out all its assets to *B* Corporation, both organized under the laws of New Jersey. *B* Corporation assumed all liabilities and issued its stock to the stockholders of *A* Corporation, without change in the proportions of their holdings. The only change was that the charter of *B* Corporation gave it slightly broader powers. At the time of the reorganization, *A* Corporation had on its books a large surplus and undivided profits. The new corporation made no profit and the company soon dissolved. The liquidating distributions in 1923, the year when the dissolution was begun, did not exhaust the amount of accumulated profits of the predecessor corporation, and the Commissioner contended that those distributions were taxable to the stockholders as dividends and not, as claimed by them, as a return of capital. The Court of Appeals for the Second Circuit agreed with the Commissioner, and held that since the reorganization was nontaxable under § 202 (c) (2) of the Revenue Act of 1921, the accumulated earnings and profits of the transferor retained their character as such for tax purposes

---

[4] Respondent agrees that the earnings and profits of the subsidiary with a surplus become, by virtue of the *Sansome* rule, earnings and profits of the parent, whatever the ultimate treatment of the deficits of the other subsidiaries.

in the hands of the transferee and were consequently taxable on distribution as ordinary income under § 201 of the same Act.[5] The view of the court was thus expressed by Judge Learned Hand: "Hence we hold that a corporate reorganization which results in no 'gain or loss' under section 202 (c) (2) (42 Stat. 230) does not toll the company's life as continued venture under section 201, and that what were 'earnings or profits' of the original, or subsidiary, company remain, for purposes of distribution, 'earnings or profits' of the successor, or parent, in liquidation." 60 F. 2d 931, 933. The rule has been consistently followed judicially [6] and has received explicit Congressional approval.[7]

---

[5] Section 201 of the 1921 Act specifies what corporate distributions are taxable as dividends; § 202 (c) (2) provides for the nonrecognition of gain or loss from certain corporate reorganizations.

[6] *Commissioner* v. *Munter*, 331 U. S. 210; *United States* v. *Kauffmann*, 62 F. 2d 1045; *Murchison's Estate* v. *Commissioner*, 76 F. 2d 641; *Harter* v. *Helvering*, 79 F. 2d 12; *Georday Enterprises, Ltd.* v. *Commissioner*, 126 F. 2d 384; *Reed Drug Co.* v. *Commissioner*, 130 F. 2d 288; *Robinette* v. *Commissioner*, 148 F. 2d 513; *Putnam* v. *United States*, 149 F. 2d 721. See also *Coudon* v. *Tait*, 61 F. 2d 904, which was decided a few months after *Sansome* and reached the same result independently.

[7] The Senate Finance Committee Report on § 115 (h) of the Revenue Act of 1936, S. Rep. No. 2156, 74th Cong., 2d Sess., p. 19 (1939–1 Cum. Bull. (part 2) 678, 690), recognized the rule of the *Sansome* case, and said that the amendment made by that Act intended no change in existing law, but was added only in the interest of clarity. U. S. Treas. Reg. 94, Art. 115–11, promulgated under the 1936 Act, incorporates the substance of the report. The Revenue Act of 1938 amended § 115 (h) only by extending its application to distributions of "property or money" as well as of "stock or securities"; the effect was to make § 115 (h) harmonize with § 112 (b) (6) and (7); and Treasury Regulations 101, promulgated under the 1938 Act, was amended to conform. The Internal Revenue Code contains the section substantially unchanged.

Section 501 of the Second Revenue Act of 1940 added § 115 (l) to the Internal Revenue Code, to elaborate the law with regard to

The rationale of the *Sansome* decision as a "continued venture" doctrine has been often repeated in the cases, and in some of them the fact that the successor corporation has differed from the predecessor merely in identity or form [8] has lent it plausibility. Other cases, however, demonstrate that the "continued venture" analysis does not accurately indicate the basis of the decisions. The rule that earnings and profits of a corporation do not lose their character as such by virtue of a tax-free reorganization or liquidation has been applied where more than one corporation has been absorbed or liquidated,[9] where there has been a "split-off" reorganization,[10] and where the reorganization has resulted in substantial changes in the proprietary interests.[11]

In *Commissioner* v. *Munter,* 331 U. S. 210, this Court reversed a decision of the Court of Appeals for the Third Circuit which had held in favor of the taxpayer on the ground that the ownership of the successor corporation was so different from that of the two predecessors that there was not sufficient continuity of the corporate entity to apply the *Sansome* doctrine. The opinion of the Court stated our unanimous view of the basis of the rule: "A basic principle of the income tax laws has long been

the effect of tax-free distributions on earnings and profits. The reports accompanying the bill in Congress, H. R. Rep. No. 2894, 76th Cong., 3d Sess., p. 41 (1940–2 Cum. Bull. 496, 526), and S. Rep. No. 2114, 76th Cong., 3d Sess., p. 25 (1940–2 Cum. Bull. 528, 546–547), both recognize the application of "the principle under which the earnings and profits of the transferor by reason of the transfer become the earnings and profits of the transferee." *Ibid.,* p. 25. The reports do not mention deficits.

[8] See, *e. g., Murchison's Estate* v. *Commissioner, Reed Drug Co.* v. *Commissioner, United States* v. *Kauffmann,* all *supra,* n. 6.

[9] *Harter* v. *Helvering, Baker* v. *Commissioner,* 80 F. 2d 813.

[10] *Barnes* v. *United States,* 22 F. Supp. 282; *Estate of McClintic,* 47 B. T. A. 188; *Stella K. Mandel,* 5 T. C. 684.

[11] *Commissioner* v. *Munter, supra.*

that corporate earnings and profits should be taxed when they are distributed to the stockholders who own the distributing corporation. . . . Thus unless those earnings and profits accumulated by the predecessor corporations and undistributed in this reorganization are deemed to have been acquired by the successor corporation and taxable upon distribution by it, they would escape the taxation which Congress intended. . . . The congressional purpose to tax all stockholders who receive distributions of corporate earnings and profits cannot be frustrated by any reorganization which leaves earnings and profits undistributed in whole or in part." 331 U. S. at 214, 215. See *Murchison's Estate* v. *Commissioner,* 76 F. 2d 641, 642; *Putnam* v. *United States,* 149 F. 2d 721, 726; *Samuel L. Slover,* 6 T. C. 884, 886. We conclude from the cases that the *Sansome* rule is grounded not on a theory of continuity of the corporate enterprise but on the necessity to prevent escape of earnings and profits from taxation.

The decision of the Court of Appeals for the Second Circuit in *Harter* v. *Helvering,* 79 F. 2d 12, is not inconsistent with this view. In that case the situation was as follows: *A* Corporation and *B* Corporation, each of which had accumulated earnings and profits, merged to form *C* Corporation. By the operation of the *Sansome* rule, the earnings and profits retained their character as such in the hands of *C.* Some time later, *D* Corporation acquired all the stock of *C,* and thereafter liquidated it in a transaction in which no gain or loss was recognized. At the time of the liquidation of *C* Corporation, *D* Corporation, the parent, had a deficit in earnings and profits. The court held, in determining the amount of earnings and profits available to *D* Corporation after the liquidation for distribution as dividends, that its deficit should be deducted from the accumulated earnings and profits acquired from its subsidiary. It is vigorously contended

that the logic of the *Harter* case compels the allowance of a deduction of the deficits of the subsidiaries from the accumulated earnings and profits of the parent. We believe this view to be the product of inadequate analysis.[12] The difference between the *Harter* situation and the problem before us may perhaps be clarified by comparing them taxwise if neither liquidation had occurred. Briefly stated, in the case of a distribution to a corporation with a deficit from either current or prior losses, the corporation receiving the distribution has no taxable income or earnings or profits available for current distribution until current income exceeds current losses, and no accumulated earnings or profits until its actual deficit from prior losses is erased. See 1 Mertens, Law of Federal Income Taxation (1942) § 9.30, and cases cited therein n. 44 *et seq.* In the instant situation, however, the parent did have accumulated earnings and profits available for distribution as dividends, absent the liquidation. Congressional intent to tax such earnings and profits on their distribution cannot be prevented by the fact of an intervening reorganization or liquidation.[13]

The operation of the *Sansome* rule on the taxation of corporate distributions is brought into high relief by consideration of the economic relation between a parent

---

[12] See Note, *The Effect of Tax-Free Reorganizations on Subsequent Corporate Distributions*, 48 Col. L. Rev. 281; Atlas, *The Case of the Disappearing Earnings and Profits*, in Seventh Annual Institute of Federal Taxation, 1155; cf. 1 Mertens, Law of Federal Income Taxation (1942) § 9.58; 1 Montgomery, Federal Taxes—Corporations and Partnerships 1948–49, 154 (1948); Green, *Recent Trends Under the Sansome Rule*, in Sixth Annual Institute on Federal Taxation, 338; cf. Rudick, *"Dividends" and "Earnings or Profits" Under the Income Tax Law: Corporate Non-Liquidating Distributions*, 89 U. Pa. L. Rev. 865, 896.

[13] *Senior Investment Corp.*, 2 T. C. 124, did not involve the question before us, but was concerned with the applicability, for purposes of computing surtax on undistributed profits, of §§ 26 (c) (1) and 26

corporation and its subsidiary. Congress requires that earnings and profits, current or accumulated, be taxed to the recipients thereof as dividends on their distribution.[14] If a subsidiary has a surplus in earnings and profits, the parent has a choice of two methods by which it may "realize" this surplus. It may cause the subsidiary to declare a dividend, or it may liquidate its interest or part of its interest in the subsidiary. In the former case, the distribution would of course be taxable as ordinary income to the parent insofar as that distribution, plus the parent's other income, represented net income to it. If the parent uses the second method, two alternatives again are available: the liquidation may take the form of a sale outright, or may be performed within the framework of the reorganization sections of the Internal Revenue Code or its predecessor acts. If the former, gain is of course realized, and is also recognized for tax purposes. We note in passing, in this connection, that such gain will correspond, if at all, only by coincidence with the amount of earnings and profits of the subsidiary. If the latter, Congress has determined that the gain shall not be recognized at that time, but that such recognition shall be deferred. If the subsidiary has a deficit in earnings and profits, the deficit may be "realized" by the parent only by liquidation, and the

(c) (3) of the Revenue Act of 1936, the latter as amended by § 501 (a) (2) of the Revenue Act of 1942, to the transferor corporation in a tax-free reorganization. 49 Stat. 1664; 56 Stat. 798, 954. The question of "inheritance" of a deficit was not in issue. See Green, *supra*, note 12, at 341.

[14] The operation of the *Sansome* rule is restricted, of course, to earnings and profits which are not considered to be distributed to its own stockholders by the transferor corporation in a tax-free reorganization. *Commissioner* v. *Munter*, 331 U. S. 210, 215–16; *Samuel L. Slover*, 6 T. C. 884. Cf. U. S. Treas. Reg. 111, § 29.112 (b) (6)–4 as to the effect of a tax-free reorganization on minority stockholders of the transferor corporation.

same two alternatives are present as when the subsidiary has a surplus: sale, and reorganization within § 112. Again, in the former case, loss is realized and also recognized. And in the case of a reorganization or liquidation in the framework of the Code, the recognition of loss is deferred by Congressional mandate to a later time.

If the assets of the parent and subsidiary are combined via a tax-free reorganization or liquidation, the effect of the *Sansome* rule is simply this: a distribution of assets that would have been taxable as dividends absent the reorganization or liquidation does not lose that character by virtue of the tax-free transaction. Respondent's contention that the logic of the *Sansome* rule requires subtracting the deficit of the subsidiary from the earnings and profits of the parent as a corollary of carrying over the earnings and profits of the subsidiary has a superficial plausibility; but the plausibility disappears when it is noted that the taxpayer would thus obtain an advantage taxwise that would not be available absent the liquidation, since there is no way to "declare" a deficit, and thus no method of loss realization open to the parent parallel to a declaration of dividends as a mode of realizing the profits of a subsidiary.

It is urged upon us that the deficits of the subsidiaries should be subtracted from the earnings and profits of the parent in order to make the tax consequences of the liquidation correspond with corporate accounting practice. The answer is brief. The *Sansome* rule itself, as applied to earnings and profits, has never been thought to be controlled by ordinary corporate accounting concepts; its uniform effect is to treat for tax purposes as earnings or profits assets which are properly considered capital for many if not most corporate purposes, and it has long been a commonplace of tax law that similar

divergences often occur. See *Commissioner* v. *Wheeler,* 324 U. S. 542, 546; *Putnam* v. *United States,* 149 F. 2d 721, 726; 1 Mertens, *op. cit.* § 9.33; Rudick, *op. cit.* 878–906.[15]

Congress has expressed its purpose to tax all stockholders who receive distributions of earnings and profits. In order to facilitate simplification of corporate financial structures, it has further provided that certain intercorporate transactions shall be free of immediate tax consequences to the corporations. There has been judicially superimposed by the *Sansome* rule, with the subsequent explicit ratification of Congress, the doctrine that tax-free reorganizations shall not disturb the status of earnings and profits otherwise available for distribution. Nevada-California at the time of the 1937 distribution to respondent had such earnings and profits. Since we believe that to allow deduction from these earnings of the deficits of its subsidiaries would be in effect to recognize losses the tax effects of which Congress has explicitly provided should be deferred, the judgment of the Court of Appeals is reversed.

*Reversed.*

MR. JUSTICE DOUGLAS concurs in the result.

---

[15] On the merits, respondent's argument is not convincing. It fails to take into account the difference between the concept of surplus or deficit, which is a summary of the operations of the corporation reporting it, and the concept of gain or loss, which reports the effect of the tax-free transaction itself. So various are the possible permutations and combinations of the economic factors that equivalence of surplus or deficit in the accounts of the subsidiary with the gain or loss to the parent would be mere coincidence. Consider for example the case where a corporation acquires all the stock of another which at the time has a large deficit. If the subsidiary is soon liquidated, the deficit will still be large, and the parent may realize little or no loss on the liquidation. See the first two texts cited note 12, *supra.*