**Max FREEDMAN and Eulalia Ruth Freedman,**

v.

**UNITED STATES of America.**

**Eulalia Ruth FREEDMAN, Trustee,**

v.

**UNITED STATES of America**
(Three cases).

**Civ. A. Nos. 32072–32075.**

United States District Court
N. D. Ohio, E. D.

Jan. 9, 1958.

Richard Katcher, Jerome N. Curtis, Cleveland, Ohio, for plaintiff.

Sumner Canary, U. S. Atty., Cleveland, Ohio, S. J. Gitelman, Dept. of Justice, Tax Division, Washington, D. C., for defendant.

WEICK, District Judge.

In these actions, the taxpayers seek to recover income taxes amounting to $50,-617.47 which they paid on distributions received by them as shareholders of Cook Products Corporation in 1950.

The controversy here concerns the characteristics of the distributions, i. e., whether they had been paid by the corporation out of accumulated earnings or profits, as dividends, and, therefore, taxable as ordinary income as the Government contends, or whether and to what extent they were paid after the earnings and profits had been exhausted and were not taxable at all or were taxable as capital gains. § 115(a), § 22(a), § 115(d), I.R.C.1939, 26 U.S.C.A. §§ 22(a), 115 (a, d).

The reported accumulated earnings and profits of the corporation were insufficient to take care of the distributions.

The Commissioner of Internal Revenue disallowed losses sustained by wholly owned subsidiaries which had been absorbed by the parent corporation as its own indebtedness and had been used to reduce its accumulated earnings and profits. The accumulated earnings and profits of the parent were restored by the Commissioner to the extent of the previous deducted losses thus making more of the distributions taxable as ordinary income.

The legal question in the case is whether losses sustained by such subsidiaries may be availed of by the parent as an indebtedness of its own to reduce its accumulated earnings and profits.

The parties state that the precise question is one of first impression and has not previously been judicially determined.

There was no question of corporate income tax because the companies had filed consolidated returns during the period in question.

Cook Products Corporation, herein referred to as Products, was organized in 1929 and acquired all of the shares of a number of preexisting companies. They had been engaged in the door-to-door sale and distribution of coffee and other household staples through wagon routes.

When Products was organized the preexisting profits of the subsidiaries were thereupon carried as an account receivable on Products' books and operated to increase its surplus. Preexisting losses of any of the subsidiaries were also carried on Products' books as an account payable in favor of the subsidiary and operated to decrease Products' earnings and profits.

During the years in controversy, 1929 to 1933, which was a period of expansion, the same procedure was followed with respect to the profits and losses of the respective subsidiaries. Products also advanced funds to the subsidiaries which were carried on Products' books as an account receivable. Payments were made from time to time by the subsidiaries which were credited on the accounts receivable and later through reorganization the accounts receivable were paid in full.

The absorption of losses of its subsidiaries by Products was not repaid by the subsidiaries to Products as the losses were considered as the obligation of Products.

This treatment of the losses of the subsidiaries is the sole issue in the case.

■ It is settled law that for tax purposes, parent and wholly owned subsidiary corporations are not identical, but are treated as separate entities no matter how closely they are affiliated. National Carbide Corp. v. Commissioner, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779.

■ The income of a subsidiary must be reported by it for taxation and may not be siphoned off to the parent. The parent may receive the profits after taxes as a dividend. National Carbide Corp. v. Commissioner, supra.

It would seem axiomatic that if a subsidiary may not properly transfer profits to its parent, by the same token, it ought not to be able to transfer its losses, for the end result would be the same, namely, obtaining tax benefits not otherwise allowable.

In Commissioner of Internal Revenue v. Phipps, 336 U.S. 410, 69 S.Ct. 616, 93

L.Ed. 771, the Supreme Court held that upon dissolution of subsidiaries having deficits, such deficits could not be subtracted from the surplus of the parent company.

If this result could not be accomplished through the tortuous procedure of dissolution, it is not understandable how it could be reached by the simple expedient of absorption through an agreement of promoters of a corporation.

It was claimed that Products was organized in 1929 pursuant to a previous agreement between promoters of the corporation which provided for transfer of profits and losses of the subsidiaries to the parent during the period of expansion; that the books reflected the procedure provided for in the agreement and that since payment of losses was actually made by the parent, the surplus was reduced and this must be recognized as an accomplished fact.

The contract between the promoters was in writing and consists of twenty-one pages. It contained many important provisions including an investment of $500,000 by one of the parties thereto. The contract was drafted by counsel and appears to be complete in every respect.

It is significant that while the written contract provides for the payment of net profits of the subsidiaries to the parent, as dividends, there is no provision therein for absorption of losses of subsidiaries by the parent.

Taxpayers sought to remedy this omission by offering testimony as to a contemporaneous oral agreement to the effect that the losses of the subsidiaries would be absorbed by the parent.

█ Ordinarily all previous negotiations are deemed merged in the written instrument.

It is claimed that since the Government was not a party to this written contract, the oral testimony was admissible even though it resulted in adding a provision not in the written instrument.

The Court admitted the evidence as to the oral agreement for whatever light it might shed on the surrounding facts and circumstances. It is not believed, however, that the oral testimony was competent to vary, change or add to the written instrument which was complete in every respect.

█ Giving the taxpayer, however, the benefit of any doubt, and assuming for the purpose of argument, that the oral agreement was controlling over the written instrument, this procedure still was not available for transfer of losses of a subsidiary to a parent corporation and thereby reduce its earnings for tax purposes.

Where, as here, the parent absorbed losses of the subsidiary, this operated to increase its capital investment, and it may not be charged against its profits or earnings.

Normally, when a parent advances cash to its subsidiary, the transaction is reflected on the parent's books as an account receivable. If the advancement was not a loan, but was intended as capital, the capital investment of the parent is increased.

Taxpayers contend that the absorption by the parent of the losses of the subsidiary did not represent a loan or contribution to capital. It did not constitute earnings of the subsidiary and it was not a gift. Then what was it?

Here, it was not intended that the subsidiary repay the advancements and it did not do so. The losses of the subsidiaries were treated as obligations of the parent.

Under the law, the obligations incurred by the subsidiary were not obligations of the parent. When the parent absorbed the losses, it did not diminish its assets for the value of its capital investment was proportionably increased.

If the parent had advanced cash to the subsidiary, without direction as to its use, there can be no question that the assets of the subsidiary were swelled to the extent of the advancement. The absorption of the subsidiaries' debts by the parent operates to the same effect. The parent sustained no loss in making the advancement as its capital investment

was increased. The one would balance the other.

The agreement between the promoters and the entries on the corporate books reflecting the intercorporate transactions, even though made in good faith, were not effective to alter the legal relationship between subsidiary and parent corporations or change the liability of the corporations or the shareholders for taxes.

It follows that the Commissioner was right in disallowing the deductions from the parent company's surplus of losses sustained by the subsidiaries.

Proposed findings of fact and conclusions of law may be submitted by the parties and judgment may be entered for defendant dismissing the complaints.