**J. Edgar and Louise MONROE**

v.

**UNITED STATES of America.**

**Civ. A. No. 16632.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 8, 1969.

Edward B. Benjamin, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiffs.

Peter Winstead, Asst. Atty. Gen., Tax Division, United States Department of Justice, Fort Worth, Tex., for defendant.

HEEBE, District Judge:

This is a civil action for the refund of federal income taxes and assessed interest in the amount of $25,815.93, which amount the taxpayers contend was erroneously and illegally assessed and collected by the defendant for the years 1959, 1960 and 1961. The taxpayer owns directly 100,220 shares of the stock of Canal Assets, Inc.; he also owned 10,000 shares of stock indirectly through a partnership interest. The taxpayer seeks a refund on the theory that a part of the dividends he received were a return of capital and not includable in gross income.

The main controversy is the characterization to be given to certain amounts of cash distributions of Canal Assets, Inc., which the taxpayer claims to be return of capital and which the Internal Revenue Service claims to be dividend, taxable as ordinary income. The answer to this question depends on whether the deficit, or any part of the deficit, in earnings and profits carried over in the reorganization of Canal Bank to Canal Assets, Inc.

■ The initial problem is a determination of whether the Internal Revenue Code of 1939 or the Internal Revenue Code of 1954 should apply in deciding whether the deficit in earnings and profits survived the reorganization. It is clear that the carryover of the deficit in earnings and profits from Canal Bank to Canal Assets must be controlled by the Internal Revenue Code of 1939.

The reorganization provisions and carryover of tax attributes provision of the Internal Revenue Code of 1954, §§ 351–382, became effective on June 22, 1954. Section 393 of the Internal Revenue Code of 1954.[1] As a general rule, the 1954

---

1. SEC. 393. EFFECTIVE DATES OF PARTS III AND IV.

(a) *General rule.*—Except as otherwise provided in this subchapter, parts

Code applies only to plans of reorganization (and resulting carryovers of tax attributes) adopted on or after June 22, 1954. The plan of reorganization of Canal Bank was initially adopted on May 1, 1948, only to be withdrawn on May 28, 1948. A plan of reorganization was again approved in 1950, and a ruling from the IRS was applied for on March 26, 1951. An additional ruling was applied for on November 23, 1953, and incorporated the final plan of reorganization that was actually carried out and which is involved in this controversy. It is significant that the above plans of reorganization were all approved by the shareholders and submitted to the Internal Revenue Service before June 22, 1954, the effective date of the Internal Revenue Code of 1954. More important, the approval of the plans of reorganization (and their tax-free consequences) by the IRS was given under the law embodied in the Internal Revenue Code of 1939.

Section 393(b) (3) of the Internal Revenue Code of 1954 [2] provided some relief for taxpayers whose plans of reorganization were being formulated during the transition period from the 1939 Code to the 1954 Code. These taxpayers could *elect* to have the provisions of the 1954 Code apply to a plan of reorganization if: (1) the plan was adopted after March 1, 1954, and before June 22, 1954, *or* (2) the plan was adopted before June 22, 1954, in pursuance of a court order, and all distributions under the plan were made between March 1, 1954, and July 1, 1954. As to the first proviso, it is clear that the plan of reorganization here involved was adopted no later than November 23, 1953, when the final plan was submitted to the Internal Revenue Service for a ruling. Thus, it does not qualify as a plan of reorganization adopted between March 1, 1954, and June 22, 1954.

As to the second proviso giving rise to the possibility of electing the application of the 1954 Code, the plan of reorganization was adopted pursuant to a court order. However, the statute also requires the corporations involved in the reorganization *elect* "at such time and in such manner as the Secretary or his delegate may by regulations prescribe" to have the 1954 Code apply. The Treasury Regulations on Income Tax (1954 Code), § 1.393–3, provide that the election must be filed by the corporations with their tax returns for the year in which the reorganization took place.

III and IV shall take effect on June 22, 1954.

(b) *Special rules for plans of reorganization.*—

(1) *In general.*—Except as provided in paragraphs (2) and (3), parts III and IV shall apply only in respect of plans of reorganization adopted on or after June 22, 1954. For purposes of this paragraph and paragraphs (2) and (3), a plan to make a transfer to a controlled corporation described in section 351, or a plan to make an exchange or distribution which is described in section 355 (or so much of section 356 as relates to section 355) shall be treated as a plan of reorganization.

2. SEC. 393. EFFECTIVE DATES OF PARTS III AND IV.

(a) *General rule.*—Except as otherwise provided in this subchapter, parts III and IV shall take effect on June 22, 1954.

(b) *Special rules for plans of reorganization.*—

\*     \*     \*     \*     \*

(3) Election to have 1954 code apply.—If—

(A) a plan of reorganization—

(i) was adopted after March 1, 1954, and before June 22, 1954, or

(ii) was adopted before June 22, 1954, in pursuance of a court order and all distributions under the plan occur after March 1, 1954, and before July 1, 1954, and

(B) the corporations which are parties to the reorganization elect (at such time and in such manner as the Secretary or his delegate may by regulations prescribe) to have this paragraph apply,

then the tax treatment of such reorganization (as to the corporations which are parties to the reorganization and as to their shareholders and security holders) shall be determined under this Code and not under the Internal Revenue Code of 1939.

The shareholders are also required to attach a copy of the election to their returns. The record does not reflect that either Canal Bank, Canal Assets, or any shareholders filed elections with their tax returns seeking application of the Internal Revenue Code of 1954.

While both parties contend that they prevail under either the 1939 Code or the 1954 Code, the tax consequences of the reorganization of Canal Bank into Canal Assets are controlled by the Internal Revenue Code of 1939.

■ There is no express provision in the 1939 Code which treats of the carry-over of a deficit in earnings and profits following a reorganization. However, there are several cases which have established a jurisprudence sufficient to answer the problem.

The landmark case is Commissioner of Internal Revenue v. Sansome, 60 F.2d 931 (2d Cir. 1932) which held that a corporate reorganization which results in no gain or loss to the shareholders does not toll the company's life as a continued venture and that what were earnings or profits of the original company remain, for purposes of distribution, earnings or profits of the successor in liquidation.

This case was then followed by Commissioner of Internal Revenue v. Munter, 331 U.S. 210, 67 S.Ct. 1175, 91 L.Ed. 1441 (1947) which held that upon a reorganization of two corporations into a new corporation, accumulated earnings and profits of the predecessor corporations which are undistributed in the reorganization are deemed to be acquired by the successor corporation and upon distribution by it are taxable as income, notwithstanding the participation of new investors in the successor corporation.

The next case was Commissioner of Internal Revenue v. Phipps, 336 U.S. 410, 69 S.Ct. 616, 93 L.Ed. 771 (1947) which held that in a tax-free liquidation by a parent of some of the subsidiaries, the rule of Commissioner of Internal Revenue v. Sansome would not allow the subtraction of the subsidiaries' deficit from the parent's earnings and profits, in determining whether a subsequent distribution by the parent constituted dividends or a return of capital to its stockholders.

*Phipps* is the last Supreme Court case on the subject but is followed by decisions in the First and Tenth Circuits. United States v. Snider, 224 F.2d 165 (1st Cir. 1955) held that in a tax-free reorganization of a Massachusetts real estate trust into a corporation, the deficit of the real estate trust could be carried over into the reorganized corporation and could be used to offset profits of the newly organized corporation.

The latest case is United States v. El Pomar Investment Co., 330 F.2d 872 (10th Cir. 1964), which held that the deficits of a corporation which had undergone two tax-free reorganizations could carry over to the successor corporations the deficit in earnings and profits to be used to offset new earnings.

Both sides rely on the *Sansome* rule but each differ in their interpretation. The government cites Commissioner of Internal Revenue v. Munter and Commissioner of Internal Revenue v. Phipps while the taxpayer relies on United States v. Snider and United States v. El Pomar Investment Co. But the instant case presents a unique factual situation not present in any of the cases cited to this Court.

Here the relevant facts show that of the 100% assets present on December 31, 1949, before any liquidating distributions to shareholders, at the time the reorganization took place only 20% of the book-value assets were present while the other 80% of the book-value assets had been given to the stockholders in five separate distributions.

More specifically, the balance sheet of Canal Bank, In Liquidation, as of December 31, 1949, reflected the following:

| | |
|---|---|
| Net Worth: | $ 7,306,995.35 |
| (Assets less liabilities) | |
| Capital and Paid-in Surplus: | 15,122,914.37 |
| Deficit (Earnings & Profits): | $ 7,815,919.02 |

In the period from December 1, 1950, through the reorganization into Canal Assets, on June 29, 1954, the amount of all distributions in partial liquidation were charged against "Capital and Paid-in Surplus," while current income in each year was applied to reduce the "Deficit (Earnings & Profits)." The cash distributions under court approved liquidation to the shareholders were as follows:

| | |
|---|---|
| June 5, 1950 | $1,213,050.00 |
| July 5, 1950 | 3,639,150.00 |
| December 21, 1950 | 808,700.00 |
| December 1, 1952 | 606,525.00 |
| May 21, 1954 | 606,525.00 |
| TOTAL | $6,873,950.00 |

To the cash distributions must be added 144,352 shares of Southdown Sugars, distributed on June 5, 1950, and 404,350 shares in a mineral trust distributed on May 21, 1954. As of June 29, 1954, the date of reorganization, the assets and liabilities of Canal Bank & Trust Company were transferred to Canal Assets, Inc., and became the new company's opening balance sheet, which reflected:

| | |
|---|---|
| Assets: | $1,397,009.59 |
| Liabilities: | –000– |
| Net Worth: | $1,397,009.59 |
| Capital Stock: <br> (80,870 shares at $1.00 par value) | $ 80,870.00 |
| Paid-in Surplus: | 7,712,375.37 |
| Deficit (Earnings & Profits): | (6,396,235.78) |
| | $1,397,009.59 |

It is apparent that the distributions in partial liquidation of 80% of the company's assets were all treated as a reduction of the capital account, with no proportionate reduction of the deficit in earnings and profits.

Comparing again the two balance sheets (which are not disputed):

| | |
|---|---|
| Assets before liquidation | $9,496,995.35 |
| Assets at reorganization | 1,397,009.59 |
| Decrease in assets | $8,099,985.76 |
| Deficit claimed by taxpayer before liquidation | $7,815,919.02 |
| Deficit claimed by taxpayer at reorganization | 6,396,235.78 |
| Claimed decrease in deficit | $1,419,683.24 |

Thus, in this case, Canal Bank reorganized into Canal Assets, Inc., while carrying over but 20% of its assets and 100% of its deficit in earnings and profits. In United States v. Snider and United States v. El Pomar Investment Co., both heavily relied on by the taxpayer, the reorganizations were such that the entire assets of the old corporation carried over to the new corporation. If that situation were present, this Court would rule in favor of the taxpayer.

In Snider a real estate trust existed which had a deficit of $327,000 and as assets two hotels: (1) Hotel Braemore and (2) Hotel Kenmore. The trust reorganized into two separate corporations and then into a single corporation, known as the Hotel Kenmore Corporation. This corporation had the same assets, i. e., the two hotels. The only thing that changed was the legal structure under which the two hotels were operating, viz., from a Massachusetts real estate trust to a corporation. In this situation the deficit of the trust was allowed to be carried over to the new corporation.

In El Pomar Investment Co. a single corporation underwent two reorganizations, and the court allowed the carry-over of the deficit in earnings and profits in the reorganizations. In January 1920 the Garden City Sugar and Land Company reorganized into the Delaware-

Garden City Company, and in 1930 this latter company reorganized into the Colorado-Garden City Company. The important fact to note in this case is that in each reorganization the entire assets of the old corporation were carried over into the new reorganized corporation. We quote from the case:

> "Delaware-Garden City carried on the same kind of business at the same place and with the same property as had the Sugar and Land Company."
>
> \*   \*   \*   \*   \*   \*
>
> "Colorado-Garden City carried on the same kind of business at the same place and with the same property that had been carried on by Delaware-Garden City." 330 F.2d 872, at 875.

The basis of *Sansome, Phipps, Snider* and *El Pomar* is preventing tax avoidance. This Court will not allow Canal Assets to carry over the full deficit of Canal Bank ($6,396,235.78) while carrying over merely 20% of the assets. To do so would give a tax advantage to the shareholders.

If the deficit in earnings and profits were not reduced proportionately because of the distributions in partial liquidation, the shareholders could realize 80% of the capital gain (or loss) upon the partial liquidation of the company, reorganize the remaining 20% of the assets into a new corporation, and then carry over the full amount of the deficit in earnings and profits to be offset against future earnings of the new company. In this manner, future dividends would be converted into capital gain. The shareholders would realize more capital gain (or loss) than if the old company had been completely liquidated.

Therefore, we find the deficit to be carried over to Canal Assets, pursuant to the reorganization, should be computed as follows:

| | |
|---|---:|
| Capital and Paid-in Surplus as of December 31, 1949: | $15,122,914.37 |
| 20% of the above attributable to 20% of the stock involved in the reorganization: | 3,024,582.87 |
| Capital and Paid-in Surplus of Canal Assets, Inc., as of June 29, 1954: | 3,024,582.87 |
| Assets of Canal Assets, Inc., as of June 29, 1954: | 1,397,009.59 |
| Deficit in Earnings and Profits of Canal Assets, Inc., as of June 29, 1954: | $ 1,627,573.28 |

The resulting opening balance sheet of Canal Assets would be as follows:

| | |
|---|---:|
| Assets: | $1,397,009.59 |
| Liabilities: | –000– |
| Net Worth: | $1,397,009.59 |
| Capital Stock: | $ 80,870.00 |
| (80,870 shares at $1.00 par value) | |
| Paid-in Surplus: | 149,693.69 |
| Deficit (Earnings & Profits): | (1,627,573.28) |
| | $1,397,009.59 |

———◆———

The above, in effect, allocates the deficit between the 80% of the assets distributed and the remaining 20% of the assets transferred to Canal Assets.

Accordingly, it is the order of the Court that the income tax of petitioner for the years 1959, 1960 and 1961 be computed in light of our ruling that only 20% of the deficit in earnings and profits carried over to the reorganized Canal Assets, Inc.