**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 298, Docket 26041.**

United States Court of Appeals Second Circuit.

Argued April 13, 1960.

Decided May 25, 1960.

Clark, Circuit Judge, dissented.

Whitman, Ransom & Coulson, New York City, for plaintiff-appellant. James K. Polk, Harold F. Noneman, and Julius M. Jacobs, New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, for defendant-appellee. Arthur V. Savage, Asst. U. S. Atty., New York City, of counsel.

Before LUMBARD, Chief Judge, and SWAN and CLARK, Circuit Judges.

SWAN, *Circuit Judge.*

Plaintiff-appellant is a well-known public utility corporation which keeps its books and files its tax returns on an accrual and calendar year basis. It brought the present suit under 28 U.S.C.A. § 1346(a) to recover an alleged large overpayment of federal income taxes for the year 1951. Defendant's answer to the complaint interposed a general denial and an affirmative defense of collateral estoppel. A motion for summary judgment based on the affirmative defense was denied by Judge Palmieri in 1958 in an opinion reported at D.C., 162 F.Supp. 854. Thereafter, upon amended pleadings and a stipulation which eliminated all factual issues, each party moved for summary judgment. The district judge, Judge Sugarman, before whom these motions were argued, denied plaintiff's motion, granted defendant's, and dismissed the complaint. This is the order appealed from.

The ultimate questions to be decided are two, namely, (1) whether, under § 23(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(c), a contested real estate tax liability accrued in the year the litigation was settled, or in a prior year when the contested tax was involuntarily paid under protest; and (2) whether the receipt of a partial refund of the contested and involuntarily paid tax, constituted income to the taxpayer in the year of settlement.

Before reaching the merits of these issues, it is desirable to consider defendant's contention of collateral estoppel based upon a decision of the Court of Claims which adjudicated the identical issues with respect to contested real estate taxes of earlier years. Consolidated Edison Co. of N. Y. v. United States, 135 F.Supp. 881, 133 Ct.Cl. 376, certiorari denied 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444. The Court of Claims held that the contested taxes were deductible as a liability in the year they were paid to the City of New York, and that the amount refunded was income to the taxpayer in the year it was received from the City.[1]

---

1. The stipulation mentioned above preserved the Government's right to raise the question of *res judicata* or collateral estoppel on any appeal taken herein.

On the issue of collateral estoppel both parties rely on Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, as they also did when that issue was before Judge Palmieri in 1958. He decided the issue adversely to defendant. We agree with his conclusion and are entirely satisfied with the reasoning of his opinion reported in 162 F.Supp. 854. As the Sunnen opinion states in 333 U.S. at page 601, 68 S.Ct. at page 721:

" * * * And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of *stare decisis*."

Under the New York law as to real estate taxes, the assessed valuation and the tax imposed on a given parcel of land for a given year is separate from, independent of, and unconnected with the assessed valuation and tax imposed on that parcel for any other year; and the same is true with respect to the administrative and judicial proceedings by which an aggrieved owner seeks review of the contested assessed valuation and the tax on that parcel for the given year. Hence we think it obvious that "the relevant facts" in the Court of Claims case and in the case at bar "are separable, even though they may be similar or identical," and

that collateral estoppel does not control the legal issues "which recur in the second case."

To facilitate the presentation and consideration of the facts and legal issues involved, the stipulation above mentioned set forth an illustrative example which is applicable to all the years herein involved and reads as follows:

"(a) for the year 1949 plaintiff was notified, on January 25, 1949, of a tentative assessment in the amount of ............ $100.
(b) plaintiff duly filed by March 15, 1949, a bona fide protest, admitting liability of . 85.
(c) after hearing duly held and on or about May 25, 1949, final assessment was made in the amount of ............. 100.
(d) thereafter on or about October 1, 1949, under protest and for the stated purpose of avoiding liens, seizures, levies, penalties, interest, etc., and reserving all rights, payment was made of ............... 100.
(e) on October 25, 1949, certiorari proceedings were duly instituted in the New York Supreme Court admitting liability of, and denying liability in excess of .................. 85.
(f) in December, 1951, the certiorari proceedings were settled, fixing the tax liability at ...................... 95.
and establishing an overpayment which was duly refunded, in the amount of .......... $ 5."

The government claims, in terms of the example, that the taxpayer was required to deduct the entire $100 from its gross income in 1949, the year in which the money was paid, and to include in its gross income for 1951 the $5 refunded to it by the City in that year. The taxpayer's position is that it was required to deduct in 1949 only $85, the amount of real estate tax paid and uncontested and that it should be permitted to deduct in 1951 an additional $10, the portion of the disputed $15 ultimately determined to

have been properly assessed. The overall effect of the taxpayer's position would be to require the payment of a greater tax than the government claims is due in the year 1949, because of the smaller deduction, and a lesser tax in the year 1951, because of the additional $10 deduction accrued then and the absence of the inclusion of the $5 refund in gross income. Having paid its 1951 taxes under the government's theory, the taxpayer claims that it is now entitled to a refund.

The stipulation states the legal issues raised herein, in terms of the illustrative example, as follows:

"(a) whether plaintiff is entitled to a deduction in 1951 of $10, which represents that portion of the disputed $15 which was determined in 1951 to have been properly assessed, and

(b) whether there was erroneously included in plaintiff's 1951 taxable income $5, which represents that portion of the disputed $15 which was determined in 1951 to have been improperly assessed and which was refunded to plaintiff."

This illustrative example has greatly simplified the facts necessary to be stated on this appeal. It will suffice to say that appellant owns many parcels of real estate in New York City with respect to which corporate real estate taxes for each year were assessed by applying tax rates established by the City Council to final assessed valuations fixed by one City Tax Commission. In each of the years 1938 to 1950, with the exception of 1942 and 1943, the appellant contested in the manner prescribed by local law part of the taxes so imposed. The contest proceedings in respect to the years 1938–1940 were concluded in 1941 by a settlement which fixed the taxes at a somewhat lower figure than the taxes assessed, and the difference was refunded, although this was less than appellant had sought to recover.[2] A similar settlement was concluded in December 1951 of the contest proceedings instituted in respect to the years 1946–1950.

We turn now to the merits of the issues presented by the illustrative example. The sections of the 1939 Code which are involved are §§ 23(c), 41, 42, 43 and 48.[3] Section 23 allows a deduction from gross income to be taken for "taxes paid or accrued within the taxable year"—with exceptions not here material. Section 41 prescribes that net income shall be computed "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer," unless the method employed does not clearly reflect the income. Section 42 recognizes that items of income, though normally to be included in gross income in the taxable year of receipt, may "under methods of accounting permitted under section 41" be properly accounted for as of a different period. Section 43 says that deductions and credits "shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent * * * upon the basis of which the net income is computed, * * *" Section 48 directs that "paid or incurred" and "paid or accrued" shall be construed according to the method of accounting upon the basis of which the net income is computed.

In a number of cases involving the counterparts of these sections, the Supreme Court has explained that a tax liability becomes deductible under § 23(c), to a taxpayer keeping its books on the accrual basis, only when all events have occurred which determine the fact and amount of the tax liability. This "all-events rule," announced in United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, was very clearly restated in Dixie Pine Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270:

2. An illustrative example identical with the one set forth above, except for difference in dates, was stipulated by the parties and adopted by the Court of Claims in the prior suit involving the years 1938–1940.

3. These are the same as their counterparts in the 1954 Code and in the prior Revenue Acts. Reference will be made in terms of the 1939 Code.

"It has never been questioned that a taxpayer who accounts on the accrual basis may, and should, deduct from gross income a liability which really accrues in the taxable year. It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and is contested by the taxpayer. Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated."

This was reaffirmed in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, at page 284, 64 S.Ct. 596, 88 L.Ed. 725. And Lewyt Corp. v. Commissioner, 349 U.S. 237, 242–243, 75 S.Ct. 736, 740, 99 L.Ed. 1029 states that "the concept 'accrued' embodies the annual accounting principle," and the amount of the tax accrued within the taxable year "is to be determined in accord with the normal accounting concepts relevant to the accrual basis."

██ ██ Applying these cases to the issues presented by the illustrative example it is clear that the uncontested $85 of the $100 tax accrued and was deductible in 1949. Indeed, this is admitted by both parties. We think it equally clear that the contested $15 tax liability was, for income tax purposes, a contingent liability which might or might not become a fixed liability depending upon the outcome of the State litigation. In cases of

a contested item of liability, accountants usually indicate the existence of contest by showing the item as contingent, or by a footnote. Ten dollars of the contested $15 became a fixed liability when the litigation terminated in 1951, and became deductible in that year. The remaining $5 never became a liability of the taxpayer. Nor was the receipt of that sum from the City in 1951 income of the taxpayer; it was the realization of an asset of contingent value purchased by the taxpayer when it paid the City the $15 it was contesting. A payment may constitute a capital expenditure, an exchange of assets, a prepaid expense, a deposit, or a current expense. When the exact nature of the payment is not immediately ascertainable because it depends on some future event, such as the outcome of litigation, its treatment for income tax purposes must await that event. Thus in Doyle v. Commissioner, 2 Cir., 110 F.2d 157, this court held that the income tax treatment of forfeited payments received under a contract to sell real estate was to be determined by, and was to be reflected in the year of the subsequent events, rather than the year in which the payments were received; see also Bressner Radio, Inc. v. Commissioner, 2 Cir., 267 F.2d 520.

It is true that the Supreme Court cases above cited did not involve a taxpayer who paid a contested tax during the pendency of the contest. That question was presented in the Consolidated Edison case in the Court of Claims, supra, and that Court followed its earlier decision in Chestnut Securities Co. v. United States, 62 F.Supp. 574, 576, 104 Ct.Cl. 489 which held that "Accrual, from the debtor's standpoint, precedes payment, and does not survive it." With due respect we disagree with this view. Indeed, the findings of fact with respect to applicable accounting principles which the Court of Claims made in the Consolidated Edison case are inconsistent with such decision.[4]

4. See Findings Nos. 35 to 38 inclusive, particularly 38 which reads as follows: "Under accrual accounting, when payment is made with respect to a liability which is denied in whole or in part, the accounting principle as to charges against income would be the same as if payment had not been made; such payment would

The principles of accrual accounting set forth in those findings are correct. A decision supporting them will prevent a taxpayer from taking the inconsistent positions of contesting a liability and at the same time claiming a deduction for it. The position which the government urges seems to us inconsistent with the general policy of obtaining the largest amount of tax revenue at the earliest possible date. In the usual run of cases, the government's insistence that the taxpayer take his deduction in the year of paying under protest a contested liability will result in the receipt of less tax revenue in that year. For this reason (among others) in the Chestnut Securities case, the government took a position opposite to that here urged. The government lost that case. In following the Court of Claims without discussing the principles involved, we think Judge Sugarman fell into error. In conformity with those principles summary judgment should have been entered for the plaintiff-appellant.

It is suggested in criticism of our decision that it leaves open to a taxpayer opportunities for manipulation through self-serving appraisals. Such opportunities are no greater when payment has been made under protest to prevent the attachment of liens or seizure, than when payment has not been made, as in the Dixie Pine case. The problem of determining whether the contest is a bona fide one is present in either situation. The criticism, we think, is really directed against the Dixie Pine line of decisions.

*Accordingly the judgment is reversed* and the cause remanded with directions to enter summary judgment for plaintiff-appellant pursuant to paragraphs 12 and 13 of the stipulation of the parties.

CLARK, Circuit Judge (dissenting).

Apparently accountants and at least some tax lawyers agree that the Commissioner has not been appropriately hospitable to the precepts of accrual accounting and applaud tentative judicial steps toward accepting such precepts. See, e. g., Behren, Prepaid Income—Accounting Concepts and the Tax Law, 15 Tax L.Rev. 343 (1960), discussing Bressner Radio, Inc. v. C. I. R., 2 Cir., 267 F.2d 520. For my part I would not disagree and think that within limits the trend to follow accounting ideas is desirable as bringing tax and business practices mutually into line. But I do feel it must stop short of delivering control of the revenue to the accountants. For accounting is not an exact science; and corporate balance sheets must deal with many fluid items, representing of course much factual information, but also a certain amount of prophecy, of hope, and of sheer argumentation. Because of this, because also the accountant does owe the duty of loyalty to his client, the result will naturally reflect the needs and desires of the client more than the appropriate demands of the tax collector, who not only must collect all the revenue due, but must hold the balance fairly and without discrimination among taxpayers. And the present holding, which goes beyond anything yet in the books, seems to me to exceed proper bounds in committing final adjudication as to the revenue to corporate accountants.

Consider the actual decision herein. It is that deductions for local tax liability are to be made, not when the liability is due *and* paid, but when some years later and after dispute the parties (not including the representative of the federal revenue) get together and adjust their difference. The opinion suggests no limitation of time or otherwise on the operation of the principle thus broadly announced; and upon reflection I can see none of any actual operative effect. It would seem that a taxpayer, by asserting a dispute as to a liability for taxes paid,

---

not affect the treatment of any accruals. This principle applies equally to the payment of taxes. The payment of admitted or estimated ultimate liability constitutes the payment of a current charge or expense of operations and the balance of

that payment represents an amount estimated to be ultimately recovered and is chargeable to a suspense, deferred debit, or other receivable account. The latter item represents an asset—a deposit which is expected to be recovered."

may postpone the use of such payment as an income tax deduction practically indefinitely until it finds it expedient to settle the dispute with or without receipt of a refund. I presume the dispute must be honestly asserted with perhaps some indicated possibility of success. But these are such minimal requirements as to the large tax liabilities of great corporations as to be meaningless in practice. Obviously a local tax dispute can be prolonged for years; and extrinsic factors such as a corporate reorganization might prolong it yet further. Moreover, I do not see how the principle can be limited only to tax payments; it would seem applicable to other disputed payments generally. Thus ascertainment of the corporate income is substantially taken out of the hands of the revenue authorities; discrimination between taxpayers is accomplished on the basis of the astuteness of the accountants employed; and the sound rule of *annual* federal tax accounting—perhaps the cornerstone of federal revenue collecting—is repudiated in a vitally important detail.

Moreover, an examination of the history of plaintiff's real estate tax controversies with the City of New York for the fiscal years here involved indicates that the result reached by the majority does not even accord with generally accepted accounting principles. This is shown clearly by the following table:

| City Fiscal Year | Amount of Tax Payment Contested | Amount Refunded | % of Claim |
|---|---|---|---|
| 1946–47 .......... | $ 292,250.27 | $ 132,290.00 | 45.3 |
| 1947–48 .......... | 2,925,546.94 | 1,020,232.50 | 34.9 |
| 1948–49 .......... | 3,239,580.43 | 764,162.50 | 23.6 |
| 1949–50 .......... | 3,156,256.61 | 465,522.50 | 14.7 |
| 1950–51 .......... | 3,270,292.22 | 343,745.00 | 10.5 |

My brothers are accepting the view that an accountant, viewing the tax payment for the 1950–51 fiscal year, for example, would exclude $3,270,292.22, the amount of the claim, from the tax expense accounts of that period, notwithstanding that prior experience indicates that the corporation was not likely to recover more than about 20 per cent of its claim. The accountant would also be overlooking the fact that in presenting claims based upon disputed property assessments a taxpayer will generally inflate his claim in order to secure a more strategic bargaining position. I see little correspondence between such result and the fundamental aim of accrual accounting which is to match revenues with the expenses incurred in producing such revenues.

When the amount of claimed refund is thus made determinative for federal corporate tax purposes, an open invitation is extended to manipulation through self-serving appraisals. The date and amount of payment, however, appear to me to represent a fixed and definite standard, which should be here adopted in preference to the amount which the corporation unilaterally determines to contest, or to an uncertain estimate or educated guess as to the amount of refund which may be secured at some unknown future date. See Automobile Club of Michigan v. C. I. R., 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746. Moreover, there is little reason why a taxpayer who has suffered an out-of-pocket expenditure in satisfaction of a tax assessment should be penalized by the denial of a deduction merely because he embarks upon the uncertain and often unrewarding course of contesting the amount of the assessment.

Certain Supreme Court decisions are relied on as forcing the result here reached; but at most they subscribe only to the trend as I have done above, and do

not try to establish what the limits, so obviously necessary and inevitable, will be. Justice Roberts in Security Flour Mills Co. v. C. I. R., 321 U.S. 281, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725, indeed goes so far as to speak disparagingly of taking cash payments, *inter alia*, "out of the annual accounting system and, for the benefit of the Government or the taxpayer, treat[ing them] on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or the taxpayer." Neither in that case nor in Dixie Pine Products Co. v. C. I. R., 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270, also principally relied on, is there any holding that tax liabilities already paid should not be accounted for taxwise until all disputes have somehow been put at rest.[1] On the other hand, in the only actual cases presenting the precise issue, the Court of Claims in reasoned opinions, noting and considering the obstacles I have discussed above, has reached the opposite result, which Judge Sugarman below quite properly followed. See the persuasive opinion of our oft-times colleague Judge Madden in Chestnut Securities Co. v. United States, 62 F.Supp. 574, 104 Ct.Cl. 489, and of Judge Littleton in this very case in earlier years. Consolidated Edison Co. of N. Y. v. United States, 135 F.Supp. 881, 133 Ct.Cl. 376, certiorari denied 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444. See also 2 Mertens, Law of Federal Income Taxation § 12.67, p. 106, n. 94 (1959 Cum.Supp.). Even though it has been summarily rejected by my brothers, I think Judge Madden in the Chestnut Securities Co. case, supra, 62 F.Supp. 574, 576, 104 Ct.Cl. 489, has

stated the correct principle for decision here that "Accrual, from the debtor's standpoint [and the government's as well], precedes payment, and does not survive it."

I would affirm.

---

1. In Dixie Pine Products Co. v. C. I. R., 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270, a taxpayer on the accrual basis was not allowed to deduct state taxes which he was contesting and *had not paid.* No question was raised as to taxes of a previous year which had been paid. In Security Flour Mills Co. v. C. I. R., 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, a taxpayer who was making late reimbursement of a federal processing tax

which had been declared invalid was not allowed to deduct these repayments as of the date of the original tax. Lewyt Corp. v. C. I. R., 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029, also cited, concerns only the accruing of a federal excess profits tax in a year *earlier* than that of payment. None of these cases suggests the possibility that accrual may occur long after payment.