**AUTOMOBILE CLUB OF NEW YORK, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 2, Docket 26056.

United States Court of Appeals
Second Circuit.

Argued May 8, 1962.

Decided June 22, 1962.

Michael Kaminsky, New York City (Worthman & Kaminsky, New York City, on the brief), for petitioner.

Daniel K. Mayers, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, George F. Lynch, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Thomas N. Tarleau and Robert B. Hodes, of Willkie, Farr, Gallagher, Walton & FitzGibbon, New York City, and Henry D. Costigan and Gordon M. Weber, of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., on the brief for Blue Chip Stamp Company, amicus curiae.

Samuel M. Lane, of Casey, Lane & Mittendorf, New York City, on the brief for The Sperry and Hutchinson Company, amicus curiae.

Before CLARK, MOORE and KAUFMAN, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Automobile Club of New York, Inc. (petitioner) brings this petition to review a decision of the Tax Court which sustained the Commissioner's determination of deficiencies in income tax for the years 1944 and 1946 to 1950, and in excess profits tax for 1945. The facts were stipulated and are set out in detail in the Tax Court's opinion.

Petitioner is a membership corporation which functions as an automobile club. In return for the dues and fees it receives, petitioner provides emergency road service, travel assistance, personal accident policies, bail bonds and other similar and related services to its members. In addition to an initiation fee, members pay annual dues of fifteen dollars. Dues are payable in advance and membership may begin on any day of the calendar year. Dues are nonrefundable and in the event of the dissolution or discontinuance of petitioner's business, any surplus funds would be distributed to charities selected by petitioner's board of directors. Since petitioner's obligation to provide services to its members is dependent upon the demands of its members, petitioner cannot estimate in advance the amount of monthly or annual expenses that would be incurred in rendering such services.

Petitioner kept its books according to the accrual method of accounting; amounts received as dues were credited to a reserve account and each month one-twelfth of this reserve was credited to income, thereby prorating the dues over the twelve-month membership period. Thus, in reporting its income for tax purposes, petitioner included in income only that portion of the dues payments that was attributable to months within the tax year. Consequently, a substantial portion of the amount received in payment of dues in one year would not be included in income in that year but would be carried over as a reserve into the following year when it would be included in income.

In addition to the other services that it provided for its members, petitioner, starting in 1935 and continuing throughout the years in question, made available a purchase discount plan whereby its members could obtain a 10% discount on purchases at certain gasoline and service stations and automobile accessory stores. Pursuant to contracts, petitioner sold

savings plan coupons at face value (one hundred cents in coupons for one dollar) to the participating service stations and stores. The service stations and stores would distribute these coupons to petitioner's members in an amount equal to 10% of each member's purchases. Members could then either redeem their coupons in cash from petitioner or use the coupons to pay their annual dues. Coupons were redeemed from the service stations and stores only upon cancellation of their savings plan contracts. The amount of such station and store redemptions was negligible, never exceeding between $200 and $300 in any one year.

Petitioner did not include in its taxable income for any of the years in question any part of the amount received on the sale of coupons. Instead, petitioner credited all proceeds from the sale of coupons and debited all redemptions to a reserve account. The credit balance in this reserve account increased from $57,854.04 in 1944 to $968,812.66 in 1950.

All the funds received for membership dues and from the sale of coupons were deposited in petitioner's general account. Petitioner made the redemption of coupons from its general funds and, although at all times it had sufficient liquid assets to redeem all outstanding coupons, these assets were not segregated from general corporate assets or restricted to any particular use.

The deficiencies in question arise from the fact that the Commissioner determined that petitioner should include in each year's income (1) the full amount of dues payments received during that year, and (2) the amount by which the proceeds from the sale of coupons exceeded the amount of redemptions in such year.

█ Petitioner contends that, because its receipt of membership dues gave rise to an obligation to provide services over a twelve-month period which in most instances extended beyond the year in which the dues were received, it should not have to include the full amount of the dues in income for the year in which they were received. While this appeal was pending, the Supreme Court in American Automobile Association v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961), decided that, even though a method of reporting income from the receipt of dues substantially identical to that used by petitioner, conformed to accepted accounting principles, it was a purely artificial means of reporting income for tax purposes because the obligation to perform services was not fixed but was dependent upon the demands of the members. The decision in American Automobile Association controls this case and compels us to uphold the Commissioner's determination that the full amount of the dues payments should be included in income in the year they are received.

Petitioner has attempted to distinguish this case from the American Automobile Club case on the ground that the Supreme Court in that case merely upheld the power of the Commissioner under section 41 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 41 to prescribe a method of accounting that clearly will reflect income when the method chosen by the taxpayer does not do so, and argues that in this case the Commissioner did not rely on his power under section 41 in determining the deficiencies but rather on the theory that under the "claim of right" doctrine petitioner was required by section 42 to include the dues payments as income in the year they were received. While we agree with petitioner that the Supreme Court in Automobile Club of America only affirmed the power of the Commissioner under section 41 to prescribe a method of accounting which clearly reflects income when the method used by the taxpayer does not do so, we do not agree that such a reading renders that decision inapplicable to this case. Although the notice of deficiency sent to petitioner does not state on what statutory ground the Commissioner relied in making this determination, it seems, of necessity, that the Commissioner relied on section 41. In informing petitioner that the

method it used to account for the dues payments was improper, the Commissioner was tacitly asserting that this method did not clearly reflect income, and by substituting his own determination of the amounts to be included in income, the Commissioner was asserting that the method he employed did clearly reflect petitioner's income.

Upon the facts before him, including a stipulated concession that petitioner could not estimate in advance the requirements of its members for emergency road service or any of the expenses which might be incurred in rendering general services, the Commissioner might well conclude that petitioner's accounting method did not clearly reflect income. Nor is this conclusion in any way in conflict with our decision in Bressner Radio, Inc. v. Commissioner of Internal Revenue, 2 Cir., 1959, 267 F.2d 520, because there, on the specific ground that the taxpayer's statistics showed a definite monthly business experience and financial expectancy, this court held that "petitioner's regularly employed method of accounting on an accrual basis and its deferral of income so that it most closely matched the corresponding expenses clearly reflected its true income." There "[I]ts method and the statistical material supporting its figures were not 'purely artificial.'" (p. 529)

A more difficult problem is presented in attempting to determine the income that results from the sale of the savings plan coupons. In selling these coupons, petitioner undertook to redeem them at their face value, so that no income would result to petitioner if all of the coupons were redeemed. However, petitioner does not contest the fact that it did realize income from the sale of the coupons because not all coupons sold were redeemed. The dispute between petitioner and the Commissioner is over the method to be used in order to tax the income that resulted to petitioner from the failure of some of its members to redeem coupons. The Commissioner has determined that petitioner should include in income for each year the amount by which the sale of coupons in that year exceeded redemptions in that year. Petitioner, on the other hand, argues that Regulation 118, § 39.42–5 provides the proper method for taxing this income.

The conclusion of the Tax Court that, in all cases, funds which are received subject to a liability to refund on demand must be included as income without any reduction for the liability to refund does not seem to be a realistic recognition of the true character of the coupons. By Regulation 118, § 39.42–5 the Commissioner recognized that when trading stamps or premium coupons redeemable in merchandise or cash are issued in connection with sales, the seller is entitled to deduct the amount which may reasonably be expected to be required for the redemption of such coupons during the taxable year.

While it may be that Regulation 118, § 39.42–5 provides the proper method for determining the taxable income that results from the sale of coupons,[1] we need not decide that question at this time. The regulation contemplates the use of the taxpayer's experience during the previous five years, and the experience of others engaged in similar businesses, as a basis for determining what percentage of the coupons sold during the year will eventually be redeemed.[2] See 2 Mertens,

---

1. See Bayshore Gardens, Inc. v. Commissioner, 2 Cir.1959, 267 F.2d 55, wherein this court held that a regulation (Treasury Regulation 111, § 29.22(a)-17(2)(a)) prescribing the proper method for amortizing the premium received on the sale of bonds should be applied to the amortization of a premium received on the issuance of a mortgage note because the regulation was not exceptional but was mere-

ly a statement of a clear and accurate manner of reflecting income from a certain type of transaction.

2. Treasury Regulation 118, § 39.42-5 provides:
   "*Subtraction for Redemption of Trading Stamps.*
   "(a) If a taxpayer, for the purpose of promoting his business, issues with sales

Federal Income Taxation § 12.72. However, petitioner's history of redemptions from 1939 (the beginning of the five-year period preceding 1944, the first tax year here in issue) to 1950 [3] does not present a consistent pattern on which a reasonable estimation of the percentage of redemptions to be expected from the sales in any one year could be made. The unusual conditions during the war and the early post-war period were more than likely responsible for the erratic pattern of sales and redemptions during these years.

■ Since it was not possible to make a reasonable forecast of the future redemptions of the coupons sold during these years, and in light of the fact that petitioner made no attempt to account

for this windfall income, it was not unreasonable for the Commissioner to include the excess of coupon sales over redemptions in petitioner's income. Cf. Fort Pitt Brewing Co. v. Commissioner, 3 Cir., 1954, 210 F.2d 6; United States v. O. J. Morrison Stores of Fairmont, 4 Cir. 1938, 99 F.2d 77. However, if in any taxable period petitioner's experience concerning redemptions makes it possible reasonably to forecast the percentage of coupons issued in any one year which will eventually be presented for redemption, and appropriate proof thereof is presented, the inclusion as income of the difference between coupons sold and the percentage likely to be redeemed may well "clearly reflect" petitioner's income.

Affirmed.

trading stamps or premium coupons redeemable in merchandise or cash, he should in computing the income from such sales subtract only the amount which will be required for the redemption of such part of the total issue of trading stamps or premium coupons issued during the taxable year as will eventually be presented for redemption. This amount will be determined in the light of the experience of the taxpayer in his particular business and of other users of trading stamps or premium coupons engaged in similar businesses. The taxpayer shall file for each of the five preceding years or such number of these years as stamps or coupons have been issued by him, a statement showing:
"(1) The total issue of stamps during each year;

"(2) The total stamps redeemed in each year; and
"(3) The rate, in percentage, which the stamps redeemed in each year bear to the total stamps issued in such year, regardless of the year when such redeemed stamps were issued.
"(b) A similar statement shall also be presented showing the experience of other users of stamps or coupons whose experience is relied upon by the taxpayer to determine the amount to be subtracted from the proceeds of sales. The Commissioner will examine the basis used in each return, and in any case in which the amount subtracted in respect of such stamps or coupons is found to be excessive, appropriate adjustment will be made."

3.

| Year | Sales | Redemptions | Sales in Excess of Redemptions | Redemptions in Excess of Sales |
|---|---|---|---|---|
| 1939 | $ 80,703.73 | $ 57,310.12 | $ 23,393.61 | $ — |
| 1940 | 108,910.23 | 87,960.01 | 20,950.22 | — |
| 1941 | 121,593.47 | 94,369.15 | 27,224.32 | — |
| 1942 | 43,242.21 | 126,302.60 | — | 83,060.39 |
| 1943 | 4,406.06 | 13,444.13 | — | 9,038.07 |
| 1944 | 2,738.13 | 4,428.67 | — | 1,690.54 |
| 1945 | 6,985.76 | 3,224.95 | 3,760.81 | — |
| 1946 | 97,099.32 | 26,499.88 | 70,599.44 | — |
| 1947 | 296,738.08 | 145,087.71 | 151,650.37 | — |
| 1948 | 544,449.50 | 315,405.78 | 229,043.72 | — |
| 1949 | 963,967.79 | 654,159.75 | 309,808.04 | — |
| 1950 | 1,193,546.72 | 1,007,450.48 | 186,096.24 | — |

CLARK, Circuit Judge (concurring in the result).

I concur in the decision herein and also in my brother Moore's opinion with two reservations. First, in view of the quite specific rejection in American Automobile Ass'n v. United States, 367 U.S. 687, 689, 81 S.Ct. 1727, 6 L.Ed.2d 1109, of Bressner Radio, Inc. v. C. I. R., 2 Cir., 267 F.2d 520, I do not believe we can rely on that latter·decision as being any longer authoritative. Second, the rationale of the AAA case, in my judgment, applies equally to the proceeds of the savings plan coupons as to the membership fees; and we are not justified in holding out hope for later change in their taxability.